CHALMERS, ET VIR *v.* WILLIS

[No. 383, September Term, 1966.]

380

*Decided July 5, 1967.*

The cause was argued on May 4, 1967 before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and McWILLIAMS, JJ., and reargued on May 29, 1967 before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER, BARNES, McWILLIAMS and FINAN, JJ.

*George J. Goldsborough, Jr.,* (on both arguments) for appellants.

*Dorothy H. Thompson* (on both arguments), with whom was *Ernest M. Thompson* on the brief, for appellee.

OPPENHEIMER, J., delivered the majority opinion of the Court. HAMMOND, C. J., and HORNEY, and FINAN, JJ., dissent. Dissenting opinion by HAMMOND, C. J., at page 388, *infra.*

We are called upon to decide whether a friend, who accompanies a learning driver with only a learner's permit for the purpose of giving the driver instruction and help in learning to drive, must be held, as a matter of law, to have assumed the risk of injury in an accident in which no other vehicle and no unexpected emergency was involved and in which the only ex-

planation given of the accident was the conduct of the driver. The question is one of first impression in Maryland.

The facts are virtually undisputed. The appellants, Mr. and Mrs. Chalmers, and the appellee, Mrs. Willis, and her husband, were friends. Mrs. Chalmers is 43 years of age, Mrs. Willis is 53. Since about 1953, Mrs. Willis had been anxious to learn to drive, but, after one or two brief lessons, circumstances beyond her control and unrelated to her learning capacity, prevented her from pursuing her endeavor. In March of 1965, Mrs. Chalmers agreed, solely as an act of friendship, to teach Mrs. Willis how to drive. Mrs. Willis obtained a learner's license on March 31, 1965. The automobile owned by Mr. and Mrs. Willis was used for the lessons.

The first lesson, of about two hours duration, took place on Saturday, April 3. On that day, Mrs. Chalmers, behind the wheel, began the instructions with the rudiments of starting, stopping and steering. After about 45 minutes, Mrs. Willis took over. For an hour and a quarter to an hour and a half Mrs. Willis drove up and down a lane, and around a circle through an isolated and untraveled development known as Waverly Island Estates. Mrs. Chalmers testified that Mrs. Willis did "very well", had no difficulty and nothing occurred which suggested she was not "perfectly at ease behind the wheel."

On the next day, Sunday, April 4, Mrs. Chalmers gave Mrs. Willis the second lesson. Mrs. Willis took the wheel and drove from Waverly, where the Chalmers lived, to Oxford, a distance of at least ten miles, drove down a ramp or incline to a ferry slip, and then, after a stop for a cigarette, turned the car around and drove back through Oxford. Mrs. Willis testified that, in driving through the town, she encountered pedestrians, bicyclists, narrow roads and other cars, and had "absolutely no difficulty." She said nothing to Mrs. Chalmers to indicate she was nervous or unsure. During the two days, Saturday and Sunday, until the accident, Mrs. Willis testified that she had no difficulty or problem of any kind.

On the return trip from Oxford, Mrs. Willlis, at the suggestion of Mrs. Chalmers, turned off the main road into a development known as Oaklands, where Mrs. Willis went in and "around and around" a circle and came out again without in-

cident. At the entrance to Waverly there are two brick pillars. Waverly Road, beyond the pillars, has a paved surface of 20 feet. Before making the left turn into Waverly Road, Mrs. Willis was instructed by Mrs. Chalmers with respect to observing traffic. Mrs. Willis testified that she momentarily stalled the car, but then started again and made the left-hand turn through the entrance pillars. She slowly started down Waverly Road, and the physical evidence indicates that she had proceeded at least 50 feet from the entrance pillars. She then drove off the road to her left into a shallow ditch and struck a telephone pole nine feet from the side of the road. No other vehicles were on the road, at least near the accident. Mrs. Willis' only explanation of the accident was that "I didn't pull my wheel back or let the wheel come back." Mrs. Chalmers tried, unsuccessfully, to prevent the collision.

During the two trips in which Mrs. Chalmers was instructing Mrs. Willis, Mrs. Willis had driven a total of approximately 40 miles before the accident. Nothing had happened during that time. Mrs. Willis testified that she had no momentary lapse of control, and nothing happened to demonstrate to her or to Mrs. Chalmers that she, Mrs. Willis, had any hesitancy about operating the car. Mrs. Willis testified further that, on the day of the accident, she had made "any number of similar turns." It was stipulated that Mrs. Willis, during the two days prior to the accident, had driven carefully and cautiously at all times.

Mrs. Chalmers and her husband brought suit in the Circuit Court for Talbot County for injuries sustained and losses incurred as a result of the collision. The case was tried before a jury. Mrs. Willis' motions for a directed verdict at the conclusion of the Chalmers' case and the entire case were denied. The trial judge instructed the jury, fully and carefully, on the issues of primary and contributory negligence. Mrs. Willis asked for no instructions as to assumption of risk. No exceptions were taken on behalf of Mrs. Willis to the charge, except as to the failure of the judge to rule as a matter of law that Mrs. Chalmers was not entitled to recover because she had assumed the risk of the accident. The jury returned a verdict for Mrs. Chalmers. Thereafter, on motion duly made by Mrs. Willis, the

judge granted judgment in her favor n.o.v. Mrs. Chalmers appealed; no cross-appeal was taken by Mrs. Willis. The only question before us, therefore, is whether the judgment n.o.v. was properly awarded.

The court below, in a memorandum opinion, held that the negligence of Mrs. Willis was imputed to Mrs. Chalmers, and that the "accident was caused by the inexperience and lack of skill of the learner driver which was a risk that the instructor clearly knew and fully understood when she agreed to act as such and ride in the car operated by the learner. Accordingly we rule that the plaintiff assumed the risk of this accident as a matter of law and is precluded from recovery for that reason."

In *Slutter v. Homer,* 244 Md. 131, 139-40, 223 A. 2d 141 (1966), we referred to the criticisms of the imputed negligence theory as unrealistic and fictitious, and characterized it as a "controversial doctrine." In any case, however, that doctrine is not here applicable. Whatever effect the doctrine may have as to third parties, it is inapplicable as between the parties engaged in a common enterprise. *Powers v. State, Use of Reynolds,* 178 Md. 23, 29-31, 11 A. 2d 909 (1940) ; Restatement, *Torts,* Second, § 491.

While no issue of imputed negligence is involved, the question of whether the plaintiff is barred from recovery, because she assumed the risk of what happened as a matter of law, is a close one. This Court has consistently recognized that while, in some cases, there is an overlapping between contributory negligence and assumption of risk, there is a distinction between the two. *Baltimore County v. State, Use of Keenan,* 232 Md. 350, 359-60, 193 A. 2d 30 (1963), and cases therein cited. In *Gibson v. Beaver,* 245 Md. 418, 226 A. 2d 273 (1967), Chief Judge Hammond, for the Court, quoted Prosser, *Torts,* §55, p. 303 (2d ed. 1955), as follows:

> "The defense of assumption of risk rests upon the plaintiff's consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of harm from a particular risk. Such consent may be found: * * * by implication from the conduct of the

parties. When the plaintiff enters voluntarily into a relation or situation involving obvious danger, he may be taken to assume the risk, and to relieve the defendant of responsibility. Such implied assumption of risk requires knowledge and appreciation of the risk, and a voluntary choice to encounter it."

and said:

"In determining whether a plaintiff had knowledge and appreciation of the risk, an objective standard must be applied and a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him." 245 Md. at 421.

As in the case of contributory negligence, when the undisputed facts permit only one reasonable conclusion, we have approved the granting of a summary judgment or the direction of a verdict because we found, as a matter of law, that the plaintiff had assumed the particular risk. *Gibson,* and cases cited therein at 245 Md. 422. However, again as with contributory negligence, the issue of whether the plaintiff had assumed the risk is generally one for the trier of the facts. *E.g., Keenan, supra,* at 232 Md. 366-67; *Velte v. Nichols,* 211 Md. 353, 356-57, 127 A. 2d 544 (1957); *Bull Steamship Lines v. Fisher, Use of Globe Indemn. Co.,* 196 Md. 519, 526-27, 77 A. 2d 142 (1950). See also, *Williamson Truck Lines, Inc. v. Benjamin,* 244 Md. 1, 222 A. 2d 375 (1966); Restatement, *Torts,* Second, § 496; Prosser, *op. cit. supra,* § 67, at 453-54.

In this case, two questions are involved: first, whether a plaintiff helping a driver whom the plaintiff knows has only a learner's permit is barred, as a matter of law, from recovery against the driver for injuries sustained in an accident in which the inexperience of the driver plays a part; and, second, if that question is answered in the negative, whether the court below was correct in holding that the appellant was barred from recovery as a matter of law, because of the assumption of risk, on the evidence in the case and in the posture in which the case comes to us.

On the first question, courts in other jurisdictions are di-

vided. New York and Kentucky hold that one who is licensed to operate a motor vehicle and who voluntarily accompanies a driver for the purpose of teaching him to drive, assumes the risk of the learner's inexperience and may not recover damages for personal injuries caused by the lack of skill or inexperience of the learner. *Richards v. Richards,* 324 S. W. 2d 400 (Ky. 1959); *Spellman v. Spellman,* 309 N. Y. 663, 128 N. E. 2d 317 (1955); *LeFleur v. Vergilia,* 280 App. Div. 1035, 117 N. Y. S. 2d 244 (1952); *Aloisio v. Nelson,* 27 Misc. 2d 343, 209 N. Y. S. 2d 674 (Sup. Ct. 1961).[1] On the other hand, Massachusetts, South Dakota, California, Louisiana and Pennsylvania hold that a licensed operator riding with a person who possesses only an instruction permit does not assume the risk of the driver's negligence as a matter of law; whether there has been such an assumption is a question of fact. *Holland v. Pit-*

---

1. In Corbett v. Curtis, 225 A. 2d 402 (Me. 1967), the plaintiff was accompanying the defendant, who was driving under a learner's permit. There was a statutory requirement that learners could operate cars only under the supervision and instruction of a licensed operator. As the defendant was driving the car over a wooden bridge, it suddenly veered to the right and dropped into the river below. No explanation was given as to how the accident occurred. The jury gave a verdict for the plaintiff; a motion of the defendant for judgment n.o.v. was denied. The judgment for the plaintiff was affirmed. The Supreme Judicial Court held that, on the facts, the rule of res ipsa loquitur could be applicable, and the jury apparently so found. The court said further that there was no sufficient evidence that any lack of skill or inexperience on the part of the defendant was the proximate cause of the accident. In discussing the law, the court said:

"The weight of authority holds that a person riding with an unlicensed operator for the purpose of instructing him in the operation of the car assumes the risk of injury if it is occasioned by the lack of skill and experience of the driver. This is not so, however, if the action results from an act of negligence on the part of the driver not attributable to his lack of skill or experience. When a person enters a car for the purposes of supervising and assisting one in possession of a learner's permit to practice driving, and also to satisfy the requirements of Sec. 537, he is not as a matter of law subject to the rule of assumption of risk * * * The assumption of risk under the circumstances of the instant case is a jury question." 225 A. 2d at 408.

*occhelli,* 299 Mass. 554, 13 N. E. 2d 390 (1938) ; *Jennings v. Hodges,* 129 N. W. 2d 59 (S. D. 1964) ; *Roberts v. Craig,.* 124 Cal. App. 2d 202, 268 P. 2d 500 (1954) ; *Constantin v. Bankers Fire & Marine Ins. Co.,* 129 So. 2d 269 (La.App. 1961) ; *Joyce v. Quinn,* 204 Pa. Super. 580, 205 A. 2d 611 (1964).

We agree with the latter decisions. In our opinion, the better rule is that the person helping the learner-driver does not, as a matter of law, assume the risk of anything that may happen to him as the result of an accident in which the driver's inexperience plays a part. Rather, we think the questions are whether the plaintiff assumed the particular kind of risk involved, the degree of incompetence or inexperience of the driver which, on the facts, should reasonably have been anticipated by the plaintiff, and whether, given the driver's experience in the act or omission which caused the accident, the driver may properly be held negligent, despite his inexperience. Where these questions are involved, as we believe they are in the present case, then we think the question of whether the plaintiff assumed the risk of the driver's conduct under all the circumstances, in which inexperience is included, is one for the trier of the facts.

Some of the cases indicate a distinction between the position of a plaintiff who is merely accompanying the driver-learner because of a statutory requirement and one who is actively assisting the driver. This distinction, we think, is one of the factors which may be considered by the trier of the facts, in that the first situation may indicate the plaintiff's confidence that the driver, because of prior experience, is reasonably competent, but we do not believe this factor, of itself, should be determinative. In *Holland v. Pitocchelli, supra,* and *Constantin v. Bankers Fire & Marine Ins. Co., supra,* the plaintiff was instructing the driver, and in *Roberts v. Craig, supra,* although the plaintiff was not in the usual role of an instructor, she was. giving actual assistance at the time of the accident.

In the case before us, Mrs. Willis had driven, with Mrs. Chalmers instructing her, on two successive days, in various. kinds of traffic and with no previous incident or compelling reason for Mrs. Chalmers to feel that she could not competently respond to the ordinary requirements of steering the automo--

bile. The accident occurred because Mrs. Willis, after making a left-hand turn, did not let the wheel come back or pull it back. The evidence is uncontested that she had made a number of similar left-hand turns during her previous driving of 40 miles without difficulty. Under these circumstances, the jury, if the question of assumption of risk had been submitted to it, could reasonably have found that Mrs. Willis' previous experience in the kind of situation with which she was confronted was sufficient to make her failure to turn the wheel negligent, despite her inexperience, and that Mrs. Chalmers, at the time of the accident, was not assuming the risk of Mrs. Willis' sudden ineptitute or negligence in the single act involved.

The verdict of the jury necessarily was based on a finding that Mrs. Willis was negligent. Mrs. Willis did not ask the court below to instruct the jury on the issue of assumption of risk, and took no exception to the court's failure to do so. She asked only for a directed verdict, and later for judgment n.o.v. For the reasons given, we find that the judgment n.o.v. was improperly awarded. Accordingly, judgment must be given for Mrs. Chalmers on the jury's verdict.

> *Judgment reversed; case remanded for entry of judgment for appellants in accordance with verdict of jury; costs to be paid by appellee.*

HAMMOND, C. J., dissenting:

I accept the majority's statement of the facts with only minor additions later mentioned, but I cannot accept their conclusion. Although the precise question here involved is one of first impression in Maryland the application of well-established rules regarding the assumption of risk and causation leads me to conclude that as a matter of law there was an assumption by Mrs. Chalmers of the risk of misfortunes which might result from Mrs. Willis' inexperience, and that the risk assumed was the cause of the accident which resulted in Mrs. Chalmers' injury.

The doctrine of assumption of risk rests upon the plaintiff's express or implied consent to encounter a known risk, which

relieves the defendant of an obligation of conduct with regard to that risk or results in the abandoning in advance of the right to complain of harm flowing from the consequences of the risk incurred. It refers to the situation in which the plaintiff with full knowledge of the risk voluntarily enters into some relation with the defendant involving danger to the plaintiff through the defendant's conduct. *Gibson v. Beaver*, 245 Md. 418; *Bull Steamship Lines v. Fisher*, 196 Md. 519, 524-25; *Warner v. Markoe*, 171 Md. 351, 359-60. If the defect or danger which creates the risk is obvious, knowledge is presumed. *Gibson v. Beaver, supra; Le Vonas v. Acme Paper Board Co.*, 184 Md. 16, 20; *Gordon v. Maryland State Fair, Inc.*, 174 Md. 466, 468-69. In the *Gibson* case we stated: "In determining whether a plaintiff had knowledge and appreciation of the risk, an objective standard must be applied and a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him." (p. 421)

Here, Mrs. Chalmers expressly agreed and undertook to teach Mrs. Willis to drive. It is obvious that Mrs. Chalmers regarded Mrs. Willis as a complete novice since for the initial lesson the teacher took the pupil to an out-of-the-way, "uninhabited" area where there was no traffic and began by teaching her the most basic fundamentals—stopping, starting, and steering. On the second day, the teaching continued and immediately prior to the accident Mrs. Chalmers gave instructions on looking for traffic and using the mirror before making turns. Continuous driving instruction is not ordinarily given to a driver in whose driving skill and experience one has confidence. Having thus demonstrated her appreciation of Mrs. Willis' inexperienced state down to the moment of the accident and having acted as she did in light of that inexperience, Mrs. Chalmers cannot be heard to deny her awareness of the specific dangers which might flow from Mrs. Willis' inexperience. The fact that Mrs. Willis had driven without incident for a total of some 30 to 40 miles over a two-day period did not render her an experienced driver. Inexperience in driving, by its very nature, is only eliminated slowly and by degrees. It is not totally or even significantly eliminated by 30 to 40 miles of safe driving. Legislative recognition of this fact has been given in recently enacted Ch. 717

of the Laws of 1967, amending Art. 66½, § 88 (1), to require that persons under 18 years of age applying for operator's licenses have at least 30 hours of classroom and 6 hours of in-car approved professional driving instruction. It also might be noted that this age group is probably one where the development of effective reflexes in driving would be somewhat more rapid than average. Some of the hazards of driving instruction have also been recognized by the Legislature, which in Code (1965 Repl. Vol.), Art. 77, § 212 (4), requires that cars used in school driver training programs "bear a red flag clearly visible from both front and rear" to warn the public. It is common knowledge that other "driver training" cars also frequently have signs warning that the driver is a learner and dual controls which, it might be noted, would have avoided the misfortune involved in this case. We think that the conclusion is compelled that Mrs. Chalmers must have appreciated Mrs. Willis' continuing inexperience and its potential consequences, and consented to assume the risk of misfortunes caused by this inexperience.

It is also plain that the only reasonable inference which can be drawn from the evidence is that the accident was the result of inexperience. It is agreed that Mrs. Willis had been driving carefully within the limits of her competence, and there is no evidence of inattentiveness, speed or distraction on her part at the time of the accident.[1] The turn was Mrs. Willis' first left turn between pillars and into a somewhat narrow road. The testimony indicates that most of her driving over the two days had been over straight roads and around circles, with relatively few left turns. In any event, even two days of making an ordinary number of turns would not make Mrs. Willis experienced in this respect. More than two days is required to learn to react instinctively to various driving situations. In the absence of some explanation such as inattentiveness, speed, distraction, or some peculiar physical condition of the road or the car, the only conclusion to be drawn is that Mrs. Willis lacked the instinctive reactions which an experienced driver would have and

1. The appellant did not undertake to prove negligence on a *res ipsa loquitur* theory as apparently was done in *Corbett v. Curtis* (Me.), 225 A. 2d 402.

that her failure to let the wheel come back or to pull the wheel back was the result of this inexperience. Under the circumstances, no attentive, experienced driver would have failed to instinctively pull the wheel back properly. Mrs. Willis' failure to do so, due to her lack of experienced instinctive reactions, was the cause of the accident and was precisely the type of risk which Mrs. Chalmers had assumed.

We have held that the doctrine of assumption of risk should be applied, as a matter of law, in cases such as this where the undisputed evidence and all permissible inferences deducible therefrom clearly establish that the risk of the danger which causes the accident was fully known to and understood by the plaintiff whose consent thereto may be implied. *Gibson v. Beaver, supra; Evans v. Johns Hopkins University*, 224 Md. 235; *Velte v. Nichols*, 211 Md. 353.

Our conclusions are supported by the decisions in other jurisdictions involving a plaintiff instructing an inexperienced operator. The general rule is stated in 8 Am. Jur. 2d, *Automobiles*, § 539, p. 98:

> "Generally, one who is licensed to operate a motor vehicle, and who voluntarily accompanies a driver who has just received a learner's permit for the purpose of teaching him to drive, assumes the risk of the learner's inexperience and may not recover damages for personal injuries caused by the lack of skill or inexperience of the learner."

One of the cases supporting this statement is *Richards v. Richards* (Ky.), 324 S. W. 2d 400. In that case, on the second day of driving instruction, the learner "put his foot 'too hard' on the accelerator and lost control of the car" which hit a tree. Holding that the question of assumption of risk was not for the jury because the instructing brother was injured in an accident clearly caused by the inexperience of the learning brother, the Court said:

> "Allen knew his brother Edgar was without experience in operating a modern car. Thus, Allen assumed a risk when he got in the car with his brother and undertook to teach him to drive. * * *

"It cannot be said this accident was caused by Edgar's negligence. It was obviously caused by his inexperience in the proper handling of the mechanical controls. * * * This is exactly the situation a person must anticipate when he undertakes to teach another how to drive. This is the risk he assumes."—402

The Courts of New York have adopted the same view in *Spellman v. Spellman*, 128 N. E. 2d 317; *Le Fleur v. Vergilia* (App. Div.), 117 N. Y. S. 2d 244; *Aloisio v. Nelson* (Supr. Ct.), 209 N. Y. S. 2d 674, 675; *St. Denis v. Skidmore* (App. Div.), 221 N. Y. S. 2d 613. In *Aloisio* the Court, citing *Spellman* and *Le Fleur*, stated: "A licensed operator who accompanies an operator possessing only a learner's permit in order to instruct that unlicensed operator, assumes the risk of the permittee's inexperience, and cannot recover damages for injuries caused by that inexperience or lack of skill."

As suggested by the majority, there are other cases which allow the question of assumption of risk to go to the jury when there is evidence that the injured passenger was merely accompanying the driver to satisfy a statutory requirement and was not giving instruction. *Turner v. Johnson* (Ky.), 333 S. W. 2d 749; *Jennings v. Hodges* (S. D.), 129 N. W. 2d 59; *Roberts v. Craig* (Cal.), 268 P. 2d 500. One explanation for the distinction which is made between these cases and those where instruction is being given may arise from the evidentiary effect of the giving of instruction. As we have noted, the giving of instruction is a clear indication of appreciation of the lack of skill and experience of the driver. When no instruction is being given, the facts as to the accompanier's appreciation of the risk ordinarily may be more in dispute and therefore for the jury. In *Turner*, for instance, the questions of whether the claimant was a teacher or a mere passenger and whether the claimant knew the driver was inexperienced were disputed matters of fact. The other cases cited also involved jury questions as to whether the conduct of the novice driver was the result of inexperience or negligence.

I would affirm. Judge Horney and Judge Finan have authorized me to say that they concur in my view of the case.